# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| CHRISSIE BLAIR, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Civil Action No. ) |
| HOSTESS BRANDS, LLC, | )  JURY TRIAL DEMANDED ) |
| Defendant. | ) ) ) |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Chrissie Blair ("Plaintiff" or "Blair") files this Complaint against Defendant Hostess Brands, LLC showing the Court as follows:

## JURISDICTION AND VENUE

1. Plaintiff's claims under Title VII, the ADAAA, and the Family Medical Leave Act ("FMLA") present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

2. This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendant resided in the Middle District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

3. Plaintiff filed a timely charge of discrimination and retaliation with the

Equal Employment Opportunity Commission ("EEOC"). The Right to Sue was issued on September 29, 2021.

## THE PARTIES

4. Plaintiff was a resident of the Middle District of Georgia and is subject to this Court's jurisdiction. Plaintiff is a former employee of Defendant.

5. Defendant is a foreign limited liability company doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia. Defendant may be served with process by serving Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

6. Defendant is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 et seq. and Title VII, 42 U.S.C. § 2000e et seq.

## FACTUAL ALLEGATIONS

7. Blair worked for Hostess starting in October 2016. In July 2018, Blair became HR Senior Manager in Columbus, Georgia.

8. Blair has physical and mental health conditions, which substantially limit one or more of her major life activities.

9. As such, Blair has disabilities as defined by the ADAAA.

10. She notified Hostess of her conditions at her hiring and thereafter throughout her employment as the conditions needed to be addressed.

11. The Columbus location was particularly difficult to oversee from a human resources perspective because of a high rate of turnover in management.

12. Although Blair had a proven track record in human resources at Hostess, Blair was the target of mistreatment at the hands of the Director of Plant Operations for the Columbus plant, George Kriedel.

13. Kriedel berated Blair in management meetings for no reason, while his behavior towards the male supervisors and directors was even toned and respectful no matter the topic or issue.

14. When Blair approached Kriedel about his offensive approach towards her, he stated that he "liked to dance" and not to be so sensitive.

15. After months of beratement, other members of management and her subordinates in Columbus shared with Blair that Kriedel's mistreatment was obvious and seemingly on account of her gender.

16. Blair finally told her supervisor, Steve Dobler, Director of Field Human Resources, that Kriedel was treating her poorly and doing so on account of her gender.  Dobler told Matt Hall, Vice President of Human Resources, who called Blair the same day.

17. Hall warned Blair how serious the allegations were, at which point she reminded him that he had told male managers not to hold back about a female employee "just because she pees sitting down."  Hall became very angry.

18. Unfortunately, Blair's complaints about the gender-motivated mistreatment set off a stream of retaliatory hostility that included her supervisors yelling at her in person and over the phone.

19. Not surprisingly, the same Human Resource executives began to voice false accusations of wrongdoing. The witch hunt had begun as Dobler questioned her subordinates about her performance and suggested that Blair was suffering mentally.

20. Blair's subordinates defended her stating that she was rational and reasonable. Nevertheless, Dobler went so far as to ask Hostess employees about Blair's medication for medical conditions she had disclosed to management at the time of her hiring.

21. Based on the mistreatment, Blair continued to engage in opposition conduct by complaining about the gender and disability discrimination.

22. As a result of the discriminatory and retaliatory work environment, Blair took FMLA leave at the end of August to treat her mental health conditions. She was supposed to return to work on September 8.

23. However, Hall told her before she returned that she could not return to work until she met him at a hotel. Blair ultimately refused. She was not allowed to return to work.

24. Hostess terminated Blair on October 26, 2020.

## COUNT I
## Title VII Gender Discrimination

25. Plaintiff incorporates each of the above factual allegations as if fully restated here.

26. Title VII entitles Plaintiff to equal treatment under the law regardless of her gender.

27. Defendant violated the Plaintiff's rights to equal treatment by, among other things, subjecting her to a hostile working environment based on her gender. Defendant violated her Title VII rights by failing to take reasonable preventative or corrective measures with respect to the unlawful discriminatory conduct.

28. Defendant's conduct constitutes unlawful discrimination, based upon gender, in violation of Title VII.

29. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered damages including garden variety emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II
## Title VII Retaliation

30. Plaintiff incorporates each of the above factual allegations as if fully restated here.

31. Title VII prohibits employers from retaliating against employees who

report or oppose sexual harassment.

32. Defendant unlawfully retaliated against Plaintiff in violation of her rights under Title VII by, among other things, taking adverse employment actions against her because she opposed and/or reported her supervisor's discriminatory behavior.

33. Defendant's conduct constitutes unlawful retaliation in violation of Title VII.

34. As a direct and proximate result of Hostess's actions, Plaintiff has suffered damages including garden variety emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT III
### Violation of ADA – Regarded As Disabled

35. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

36. At all times relevant hereto, Hostess has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

37. At all times relevant hereto, Plaintiff was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102 (1)(C) because Defendant regarded her as a person with an impairment as defined by the Act.

38. Moreover, at all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job.

39. Hostess accused Plaintiff of having performance issues because of Hostess regarded her as disabled.

40. However, Plaintiff successfully performed the essential functions of her job despite her disability.

41. Hostess terminated Plaintiff after attributing her alleged performance struggles to her health conditions.

42. Defendant terminated Plaintiff because it regarded her as disabled.

43. Defendant's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

44. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

45. Defendant's actions have caused and continue to cause Plaintiff to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT IV
## Actual Discrimination in Violation of ADA

46. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

47. At all times relevant hereto, Hostess has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

48. At all times relevant hereto, Plaintiff was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

49. Defendant was aware of Plaintiff's disability and history and record of disability.

50. At all times relevant hereto, Plaintiff has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job.

51. Plaintiff's disability substantially limits one or more major life activities.

52. Hostess accused Plaintiff of having performance issues because of her disability.

53. However, Plaintiff successfully performed the essential functions of her job despite her disability.

54. Hostess terminated Plaintiff after attributing her alleged performance struggles to her disability.

55. Defendant terminated Plaintiff because of her disability.

56. Hostess's actions are a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

57. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial. Hostess's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT V
**Retaliation in Violation of the ADA**

58. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

59. At all times relevant hereto, Hostess has been subject to the requirements of Title I of the ADA.

60. At all times relevant hereto, Plaintiff was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

61. Plaintiff engaged in protected activity under the ADA when she requested medical leave as a reasonable accommodation for her disabilities.

62. Hostess terminated Plaintiff's employment in retaliation for her request for a reasonable accommodation.

63. Hostess's actions in retaliating against Plaintiff following her request for a reasonable accommodation were committed with reckless disregard for her right to be free from retaliation because of her attempt to exercise her rights pursuant to the ADA.

64. The effect of Hostess's above-mentioned conduct has bee to deprive Plaintiff of equal employment opportunities and benefits due to her because of her attempt to exercise her right to medical leave.

65. The actions taken against Plaintiff by Hostess have caused her to suffer both monetary and non-monetary damages.

66. Accordingly, Plaintiff is entitled to the equitable and monetary relief set forth in the prayer for relief below as a result of Hostess's violation of her rights under the ADA.

## COUNT VI
## FMLA Interference

67. Plaintiff incorporates all preceding paragraphs of the Complaint.

68. At the time that Plaintiff took FMLA leave in 2020, Plaintiff was

eligible for FMLA leave.

69. Plaintiff took FMLA leave related to her own mental health conditions while her supervisor discriminated against Plaintiff and Defendant failed to protect her from his misconduct.

70. Defendant interfered with Plaintiff's right to take leave under the FMLA by terminating Plaintiff's employment despite the existence of a valid reason for her alleged work absences and her request for medical leave.

71. Defendants' actions in interfering with Plaintiff's leave were intentional and willful and committed with reckless disregard for her right to reinstatement following FMLA leave.

72. The effect of Defendant's FMLA interference has been to deprive Plaintiff of her position, wages, health insurance, and prospective retirement benefits.

73. Plaintiff is entitled to both equitable and monetary relief for Defendant's violations of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay and/or reinstatement, lost benefits, attorneys' fees and costs of litigation, and liquidated damages.

## COUNT VII
**FMLA Retaliation**

74. Plaintiff incorporates all preceding paragraphs of the Complaint.

75. At the time that Plaintiff took FMLA leave in 2020, Plaintiff was eligible for FMLA leave.

76. Plaintiff took FMLA leave related to her own emotional health conditions suffered while her supervisor discriminated against her and Defendant failed to protect her from his misconduct.

77. Defendant retaliated against Plaintiff for taking FMLA leave by, among other things, terminating Plaintiff's employment despite the existence of a valid reason for her alleged work absences and her request for medical leave.

78. Defendant's actions in retaliating against Plaintiff for taking FMLA leave were intentional and willful and committed with reckless disregard for her rights under the FMLA.

79. The effect of Defendant's FMLA retaliation has been to deprive Plaintiff of her position, wages, health insurance, and prospective retirement benefits.

80. Plaintiff is entitled to both equitable and monetary relief for Defendant's violations of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay, front pay or reinstatement, lost benefits,

attorneys' fees and costs of litigation, and liquidated damages.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

a. declaratory judgment that Defendants violated the Plaintiff's rights under Title VII, the ADAAA, and the FMLA;

b. an injunction prohibiting the Defendant from engaging in such unlawful conduct in the future;

c. full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful denial of promotion and termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

d. reinstatement of Plaintiff to her former position or in the alternative, front pay to compensate Plaintiff for her lost future wages, benefits, and pension;

e. compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's garden variety emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f. punitive damages in an amount to be determined by the enlightened

      conscience of the jury to be sufficient to punish Defendant for its conduct toward Plaintiff and deter it from similar conduct in the future;

g.   liquidated damages for Defendant's willful violations of the FMLA;

h.   reasonable attorneys' fees and costs; and

i.   other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted on this 21st day of December 2021.

                                    LEGARE, ATTWOOD & WOLFE, LLC

                                    *s/Eleanor Mixon Attwood*
                                    Eleanor Mixon Attwood
                                    Georgia Bar No. 514014
                                    emattwood@law-llc.com

125 Clairemont Ave., Suite 380
Decatur, GA  30030
T:  470.823.4000
F:  470.201.1212